CHRISTOPHER JACKMAN, *ET AL.*, PLAINTIFFS-APPEL-LANTS, v. JOHN M. BODINE, *ET AL.*, DEFENDANTS-RESPONDENTS.

THE ELIZABETH DAILY JOURNAL, *ET AL.*, PLAINTIFFS APPELLANTS, v. ROBERT J. BURKHARDT, *ET AL.*, DE-FENDANTS-RESPONDENTS.

IN THE MATTER OF THE APPORTIONMENT COMMISSION PLAN FOR 1969.

Argued April 21, 1969—Decided April 22, 1969.

*Mr. William Miller* argued the cause for Apportionment Commission (*Mr. Arthur J. Sills,* Attorney General; *Mr. Allen D. Porter* on the brief).

*Mr. Arthur J. Sills,* Attorney General, filed a statement in lieu of brief on behalf of the defendant Burkhardt (*Mr. Elias Abelson* and *Mr. Stephen G. Weiss,* of counsel).

*Mr. Martin Klughaupt* argued for plaintiff, Hirkala.

*Mr. Louis Schwartz* for intervenors Mecca and Curcio.

*Mr. Lawrence I. Lerner* argued for appellants, Scrimmager and Sharper.

*Mr. Harris David* argued for appellant Harris.

*Mr. John M. Boyle* argued for intervenors Ehrhart, De-Lazaro, Orkin and McGowan (*Messrs. Sauer and Boyle,* attorneys; *Mr. Richard A. Daubner* on the brief).

*Mr. Myron Gottlieb* for appellants Tutek and Soltesz.

*Mr. James P. Dugan* for appellant Lavin.

*Mr. Gerald Goldman* argued for intervenor Dudiak.

*Mr. Sherwin Lester* argued the cause in support of the Bergen County Plan.

PER CURIAM.    This case involves the apportionment of the State for the purpose of election of assemblymen.   In *Jackman v. Bodine,* 49 *N. J.* 406 (1967), we sustained the apportionment plan there involved for the purpose of the 1967 election, subject to certain modifications, and said (*p.* 419):

"* * * As to the Assembly election scheduled for the year 1969, ample time exists for a full exploration of the challenged deviations and the reasons therefor.   To that end the 11-man Apportionment Commission shall continue in office and make a seasonable re-certification of Assembly districts for the 1969 election."

See also *Jackman v. Bodine,* 50 *N. J.* 127 (1967).

The Apportionment Commission did not certify its new work product until April 7, 1969.   We thereupon directed the filing of all objections by April 14, 1969 to the end that such challenges as might be made could be heard and resolved in time to permit the primary election scheduled for June 1969.

The objections filed included the claim that recent decisions in *Kirkpatrick v. Preisler,* 394 *U. S.* ——, 89 *S. Ct.* 1225, 22 *L. Ed. 2d* 519 (April 7, 1969) and *Wells v. Rockefeller,* 394 *U. S.* ——, 89 *S. Ct.* 1234, 22 *L. Ed. 2d* —— (April 7, 1969), undercut the doctrine upon which our earlier decisions rested.   Specifically, it is asserted that the cases just cited will permit no deviation from population equality by reason of adherence to county or municipality lines.   Those cases involved congressional districting rather than apportionment of a State legislative body.   In *Reynolds v. Sims,* 377 *U. S.* 533, 84 *S. Ct.* 1362, 12 *L. Ed. 2d* 506 (1964) the Court held that there may be departures, within unspecified limits, from mathematical equality to maintain the integrity of various political subdivisions because (1)

adherence to such political lines would deter gerrymandering[1] and (2) local governmental entities are frequently charged with various responsibilities incident to the operation of State government, 377 *U. S.,* at 580, 84 *S. Ct.,* at 1391, 12 *L. Ed. 2d,* at 538.[2] *Kirkpatrick* and *Wells* cast some possible doubt upon the utility of that approach with respect to item 1, *i. e.,* gerrymandering, but nowhere suggested that the second basis is no longer viable. We therefore cannot conclude that the Supreme Court has made the meaningful departure from *Reynolds v. Sims* which the objectors advance.

We do, however, have considerable doubt as to whether the basic plan of apportionment in our State Constitution is compatible with Federal Constitutional requirements as to either the Senate or Assembly. Specifically, we doubt that further apportionments can be made without exceeding permissible tolerances from mathematical equality. It may, therefore, be necessary to depart from the State Constitution's insistence that county and municipal lines be respected. It is perfectly clear that if reapportionment for the State legislative purposes had to be redone without reference to such lines, the practical problems would preclude the scheduled primary election and perhaps, also, a general election this year. We have in mind not only the time period which said reapportionment would entail but also the impact of such reapportionment upon the detailed election machinery. The scheduled election to the Assembly will be the last before the new census and there will be no election to the

---

[1] "* * * Indiscriminate districting, without any regard for political subdivision or natural or historical boundary lines, may be little more than an open invitation to partisan gerrymandering." 377 *U. S.,* at 578, 84 *S. Ct.,* at 1390, 12 *L. Ed. 2d,* at 537.

[2] "* * * Local governmental entities are frequently charged with various responsibilities incident to the operation of state government. In many States much of the legislature's activity involves the enactment of so-called local legislation, directed only to the concerns of particular political subdivisions." 377 *U. S.,* at 580, 84 *S. Ct.,* at 1391, 12 *L. Ed. 2d,* at 538.

Senate prior to that event. Mindful of the need to continue
orderly government, we are constrained to conclude that the
broad constitutional issue to which we have just referred
should not be entertained at this time. We will however
schedule the subject for full argument this fall, to the end
that the matter may be settled, if possible, well in advance
of the 1971 election.

It remains, therefore, to consider the objections to
the new apportionment on the basis of our earlier decision.
The apportionment was made on the premise that county,
municipal and ward lines (in the two largest cities) could
be respected. Upon that premise, the Commission, with one
exception to which we will presently refer, selected with
respect to each assembly district a map prepared with the
aid of a computer which contained the least deviation from
numerical equality within the Senate districts. The results
are an improvement on the original work product insofar
as intra-senate-district equality is concerned, and to some
extent an improvement insofar as Statewide mean average
is concerned. The improvements may be viewed as modest,
especially in the light of the practical impact of changes at
this late hour, but the work product is the best that can be
had within the framework of the Constitutional provision
applicable until 1970, and the Federal Constitution requires
no less.

As we said in the paragraph above, there was one de-
parture by the Commission from its policy to accept the best
plan revealed by the computer. The exception related to
Bergen County, and the reason assigned was the inability to
complete the task by computer in time for the Commission's
certification. However, the computer operation was con-
tinued and yielded 30 maps which were available by the time
of argument before us. We, therefore, remanded the matter
to the Commission for a supplemental report as to Bergen
County. The Commission deadlocked (one member did not
attend) upon the best of said maps and did not undertake
to vote upon the remaining maps. This map (marked No. 1)

contains a deviation range of only 39 out of 156,000 plus, and is on that basis better than the handdrawn map the Commission certified. We are satisfied that Bergen County must be districted upon the same computer approach as was used for the rest of the State and hence it is our judgment that the Commission's certified report is amended accordingly.

We have considered all of the other objections. It is clear that the Commission abided faithfully by the computer output. The objections in effect amount to claims that the Commission should have departed from the results so reached in order to recognize sundry alleged interests. To do so would have violated the controlling doctrine.

Since the district lines have been changed in many instances, it is necessary to extend the time for filing nominating petitions. The time is hereby extended to and including April 30, 1969. If further departures from the statutory time table are needed, application may be made to us on short notice.

*For modification*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL SCHETTINO and HANEMAN — 7.